PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.
MORTON TRUST CO. v. METROPOLITAN ST. RY. CO. et al. (two
cases). GUARANTY TRUST CO. OF NEW YORK. v. SAME.

(Circuit Court, S. D. New York. July 16, 1908.)

1. STREET RAILROADS (§ 58*)—LEASES—CONSTRUCTION—INSOLVENCY OF LESSEE.
     A provision of a lease of street railroad property deferring entry for nonpayment of rent until one year after default does not continue binding where, by reason of the insolvency of the lessee and its failure to pay interest, mortgages on parts of the system have been foreclosed and the system has thereby been disrupted.
     [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

2. STREET RAILROADS (§ 58*)—RECEIVERS—NECESSITY FOR SEPARATE RECEIVERSHIPS.
     Where, in a creditors' suit against an insolvent lessee of a street railroad system, to which suit the lessor became a party, receivers were appointed who operated the property for all parties in interest until foreclosure suits were instituted against the property by bondholders of the lessor, who are entitled to possession by their own receivers, and the affairs of the lessee have been so far liquidated that they may soon be wound up and an accounting had between it and the lessor, separate receivers should be appointed to represent the adverse interests.
     [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

3. STREET RAILROADS (§ 58*)—RECEIVERS—LIABILITIES INCURRED IN OPERATION.
    Where an entire street railroad system as a going concern was placed in the hands of a court on application of a creditor of the lessee, but with the consent of the lessor and its bondholders, and operated by receivers until turned over to receivers representing the bondholders, all damage claims and other liabilities incurred during such operation will be made a charge upon the entire property in so far as they cannot be paid from the earnings or the property of the lessee.
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

4. RECEIVERS (§ 201*)—SUCCESSIVE RECEIVERSHIPS—ACCOUNTING BETWEEN RE-CEIVERS.
    General rules stated to govern an accounting between receivers appointed for the lessee of a street railroad system, who had been operating the same and had purchased equipment and supplies, and receivers appointed at suit of mortgagees to whom the property was turned over.
    [Ed. Note.—For other cases, see Receivers, Dec. Dig. § 201.*]

In Equity. On application to appoint separate receivers for the lessor and lessee roads, and counter application to continue the leasehold till the expiration of a year from first default in payment of the rent.

Byrne & Cutcheon, for Pennsylvania Steel Co.
Masten & Nichols, for receivers of New York City Ry. Co.
Bronson & Winthrop, for Morton Trust Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.
Davies, Stone & Auerbach, for Guaranty Trust Co.

LACOMBE, Circuit Judge. At the time when former memoranda were filed October 1, 1907 (157 Fed. 440), and January 7, 1908 (160 Fed. 222), the situation was such that the operation of the system might be continued by receivers of the New York City Company under the lease, and the rights of all interested preserved easily and efficiently by a subsequent accounting. The lease was then in force, and no suit to foreclose mortgage had been instituted. Now the situation is changed. A regular foreclosure suit for unpaid interest under the refunding mortgage has been instituted, and it is fitting that the property covered by that mortgage should be taken over by receivers under that suit who will thereafter operate the whole Metropolitan System. The clause deferring re-entry for nonpayment of rent until one year after default presents no difficulties. There is not merely a simple default. By reason of the inability of the receivers to pay from the income the mortgage interest due January 1, 1908, on the Third avenue mortgages, that line has been foreclosed upon, and an independent receiver appointed who has taken it into possession, thus disrupting and destroying the unitary system covered by the lease. Surely the "deferred payment" clause cannot survive under such conditions.

Considerable progress has been made in liquidating claims of outsiders against the New York City Company. It is reasonable to expect that by this coming fall the great bulk of contract and tort claims will be liquidated, and the time has now come (which was anticipated in the memorandum of October 1, 1907) when steps should be taken for an accounting between that company and its lessor, the

Metropolitan Street Railway Company. However long it may be before a sale in foreclosure or some reorganization, approved by state authorities, will relieve this court and its receivers of the heavy burden of operating the property so as to maintain an efficient public service, there seems no reason why all claims against the New York City Company should not be liquidated, and its assets marshaled, and distributed without waiting for the disposition of the property now under foreclosure. To such an accounting, interests being diverse, it is essential that there should be separate receivers to represent the two roads.

Inasmuch as the present receivers, now holding all property of both roads, have by nine months' work familiarized themselves with the operation of the system, it seems wiser that they should be selected to continue such operation, and that a separate receiver should be appointed for the property of the New York City Company. Adrian H. Joline, Esq., and Douglas Robinson, Esq., are therefore appointed receivers of the Metropolitan Street Railway Cmpany under this new bill of foreclosure, and their bonds may, with assent of the surety company, be extended to cover their future operations. William W. Ladd, Esq.. of the city of New York, is appointed receiver of the property of the New York City Railway Company, with the usual powers, and his bond is fixed at $50,000. On July 31, 1908, at midnight, the present receivers will turn over to themselves all property of the Metropolitan Street Railway Company, and will turn over to the new receiver all property, including claims and choses in action. of the New York City Railway Company, from and after such transfer ceasing to be receivers of the New York City Railway Company. This date is selected for convenience of accounting, pay rolls, etc.

In order to relieve apprehensions on the part of receivers' creditors, it may be proper here to state some elementary propositions. The entire system as a going concern was placed in the hands of this court. on the application of a creditor of the lessee, but with the assent of both companies and the subsequent approval of the representatives under lessor's mortgages. Its possession of the property was confirmed by the United States Supreme Court. Since that date it has been absolutely necessary for the court to operate the road as an instrumentality of public service. In order to do so, it was necessary to make purchases of equipment, materials, supplies, etc., some of which were on credit. In the course of operation accidents have occurred through the negligence of employés, and those injured thereby in person or property have a cause of action against receivers. Future operation will produce like results. All indebtedness incurred and all damages sustained by reason of the operation of the property by the court will be paid or secured before the court parts with the property, and it need make no difference to the creditor or claimant which receiver was operating the road at the time. The receivers of the Metropolitan will adopt and affirm all contracts concerned with the operation of the system which were adopted or entered into by receivers of the New York City, and the court reserves the right to impose a lien upon the property itself for any obligations incurred by

165 F.—30

the court in its operation, and also for the expenses of court proceedings. An obligation incurred or damage inflicted by receivers when operating under the New York City lease must of course be paid from its income or property, but, in the event of these proving insufficient, then out of the income of Metropolitan receivers, and, failing that, out of the property itself. Presumably the income of each will be sufficient to pay its own expenses; but all creditors of and claimants against the court's officers may be satisfied that whatever may be found to be rightfully due them will be paid.

There is some property of the New York City which is not covered by the lease. That will, of course, be turned over to Receiver Ladd. It appears from the argument that as to one or more items there may be a dispute as to the ownership. The practical way to determine any such question will be for present receivers to turn over to the new receiver whatever they find to be the property of the New York City. Any party interested may then move the court to instruct such receiver to return the same and account for its use in the interval. There is also property which was bought with income of New York City receivers in order to keep the road in operation—equipment, supplies, material for repairs, etc. That is of no further use to New York City receiver, and will be turned over to Metropolitan receivers, who need it for running the road. All respective rights may be adjusted on the accounting which will be had between them as soon as the new receiver shall have sufficiently familiarized himself with the situation. In order to secure a proper accounting, an inventory is essential. Fortunately the regular annual inventory is about completed, as of date of June 30th; it may be taken as the basis, and, with the records of property acquired, put to use, worn out, or disposed of during the month of July, will be easily extended to the date of transfer. Two illustrations will indicate in a general way the method to be followed on this accounting:

(1) Receivers of New York City bought, we will assume, 2,000 contact plows, in order to secure discount on large purchase and to provide an abundant supply for repair work. Of these, on July 31st, 1,000 are worn out or put to use. They paid for them out of their earnings from operation. Had they known in advance that they would cease operation on that date, and that but 1,000 plows would be required, they would have bought that number only, and so much of the earnings as went to purchase the additional 1,000 would be still in their treasury. As these additional plows are to be turned over as supplies for the future to receivers of Metropolitan, the latter should account for their value, since otherwise they would have to buy them from the maker and pay for them out of their earnings.

(2) Receivers of New York City, it may be assumed, paid $10,000 out of their earnings on June 1st for premium on a 12 months' policy of insurance on cars. Having by August 1st parted with the possession of the cars and all further responsibility for them, the policy might be terminated and rebate for 10 months obtained from the insurance company. The more sensible procedure would be to transfer the policy to Metropolitan receivers; but the latter should ac-

count for so much of the premium as covers the period of their own possession and responsibility.

These are quite simple illustrations; no doubt there will be many cases where the questions presented will be intricate and difficult, and of this accounting between receivers all parties to any of these suits should have notice and an opportunity to be heard. Relieved from all burden of operation, the new receiver can make a careful examination of all points in controversy before initiating this accounting, and under the principles enunciated in this opinion all obligations for his share of the expense of liquidating claims and other court expenses, for prosecution of suits, for settlement of claims for accidents between September and July 31st, for unpaid bills, etc., can be settled as they fall due.

A proposed decretal order to be entered on this opinion, which must be very brief, reciting only the papers filed and providing merely for the new appointments, and directing transfer and assumption of obligations, as above indicated, may be submitted with notice of settlement for July 23d and filed with the clerk, to be transmitted to me on that date with any criticisms of other counsel.

The suggestions made in the petition of tort creditors' committee have been considered, but will be disposed of subsequently when that matter is finally submitted. Nothing is found in them which conflicts with the granting of above relief.

For the information of all concerned, the receivers will on August 18th file an epitome of their receipts and expenditures down to July 1, 1908, and within a few weeks subsequent to August 1st file a supplement thereto covering the present month.