MORTON TRUST CO. v. METROPOLITAN ST. RY. CO.

GUARANTY TRUST CO. v. SECOND AVE. R. CO.

(Circuit Court, S. D. New York.   October 19, 1908.)

1. STREET RAILROADS (§ 58*)—INSOLVENCY AND RECEIVERS—DISPOSITION OF LEASED LINES.

Receivers for a street railroad system directed to turn over a leased line previously operated by them, but the lease of which they elected to surrender to a receiver appointed by a state court in a foreclosure suit against the lessor, reserving certain questions as to what property should pass and of accounting between the respective receivers for future adjustment after hearings before a master.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

2. STREET RAILROADS (§ 58*)—LEASES—CANCELLATION BY RECEIVERS OF LESSEE.

Under a lease of a street railroad line which required the lessee on its termination for any cause to return all of the property leased, including all tools, implements, machinery, and equipment, or substitutes of equal value, and also a sum of money advanced, to be treated in such case as a loan, where receivers for the lessee terminate the lease they cannot be required to restore property or money which did not come into their possession, but any shortage gives the lessor a claim for damages against the estate of the lessee.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

3. STREET RAILROADS (§ 58*)—LEASES—CANCELLATION BY RECEIVERS OF LESSEE.

Where a lease of a street railroad required the lessee to pay all taxes and assessments against the property, on the cancellation of the lease by receivers for the lessee, they cannot be required as receivers to indemnify the lessor against liability for outstanding taxes which are in litigation, which is a liability of the lessee but not of the receivership.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

4. STREET RAILROADS (§ 58*)—RECEIVERS—DISCRETION TO CANCEL LEASE.

Receivers for a street railroad system, including a number of leased lines, may operate one of such lines for a reasonable time to enable them to determine whether or not to adopt the lease without incurring liability for rental under the lease, but on an election to cancel they will be required to account to the lessor for the net profits of such operation.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

Application for leave to file a petition in re Second Avenue Railroad praying that receivers of the Metropolitan be instructed to turn over the Second and First Avenue Lines to the receiver appointed by the state court, and, upon such filing, for the relief stated.

See, also, 161 Fed. 787.

Bronson Winthrop, for Morton Trust Co.

Davies, Stone & Auerbach, for Guaranty Trust Co.

Masten & Nichols, for receivers of Metropolitan St. Ry.

LACOMBE, Circuit Judge.   The property in question consists of certain street surface railroads, with their equipment, in First and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Second avenues and various other streets and avenues on Manhattan Island. It was leased by the Second Avenue Railroad Company to the Metropolitan Street Railway Company on January 28, 1898, and is included among the lines leased from the latter company by the New York City Railway Company. The rental stipulated by the Second Avenue lease aggregates $517,580 per annum, being 9 per cent. on the capital stock of that road and the interest on outstanding mortgage bonds.

The receivers appointed by this court, after an extended and exhaustive investigation, ascertained that the operation of these lines at that rental involved an annual deficit of over $200,000, while it would be necessary in the near future to expend $800,000 to put the property in proper condition. Thereupon several weeks ago they defaulted on payments falling due under the lease; a receiver of the Second Avenue Road was appointed in the state court, and he now applies to have the property covered by the lease turned over to him, so that he may run the road as an independent concern. Notice has been given to every one who has intervened, and all have been heard. Several questions are presented by the application, some of which concededly can only be answered after a hearing before a special master who can take testimony and ascertain the facts. They will be now considered and disposed of so far as may be practicable at this stage of the case.

1. The roads, buildings, and fixtures, with all such personal property as can be identified as belonging to the lessor, should be returned to its representative—that is, its receiver—subject to and without disturbance of any existing liens. This may be done promptly, but the interests of the public require reasonable notice of the change of operation; the time of return is therefore fixed for one week subsequent to the entry of the order to be entered hereon. ·

2. Subsequent to the making of the lease, the road was changed from a horse car to an electric line, and 275 electric street cars were bought with money furnished by the lessor. The exact type and description of these cars are matters of record, and the Metropolitan receivers assert that they now have on the Second Avenue Line the whole 275 in as good condition as when purchased, ordinary wear and tear excepted, which they are prepared to turn over. The petitioner contends that some (or all) of these cars at one time had placed upon them different motors, bought by the Metropolitan (or New York City) Railway Company, and insist that under a clause of the lease these last-named motors should be reaffixed to the cars, or the value accounted for. That question is one which should first be examined into before a master who will take proof of all the facts, but without waiting for his report thereon the 275 cars should be turned over with the road.

3. The car barn of the lessor at Ninety-Sixth street and Second avenue, with its contents, was destroyed by fire on February 29, 1908. The loss has been adjusted with the underwriters, and collected in whole or in part by receivers of this court. Petitioner asks to have all such insurance moneys on barn and contents (except rolling stock)

paid over to him, except in so far as said moneys are payable to mortgage trustees; and also to have paid to him such portion of the insurance moneys covering rolling stock as may be found to represent Second Avenue rolling stock. In reply it is contended that the 275 cars about to be turned over stand in place of the rolling stock insurance, and that large sums have been paid by the present receivers in clearing away the ruins and rebuilding the barn—so far as such rebuilding has progressed. Manifestly these questions cannot be disposed of until the facts are shown before the master.

4. The petitioner also asks delivery to him of all horses, harness, tools, implements, machinery, equipment, stable equipments, office fixtures, and fixtures and property of every kind used in the maintenance and operation of the railroad, delivered by the Second Avenue Company when possession was taken under the lease, together with the substitutes, increments, and additions provided or made by the Metropolitan Company therefor and thereto. In this connection it should be noted that what is now presented for consideration is not a claim against the lessee company for property converted or allowed to go to waste and destruction. It is a demand that the receivers turn over certain specific things now in their custody, and it cannot be complied with by them if no such specific things have in fact come into their possession. The horses are long since dead, and, the road being now electric, presumably the harness and stable equipments have also disappeared without replacement. The receivers offer to turn over all items that can be identified, and proof may be taken before the master as to any other items which petitioner thinks should come to him. As to tools, implements, etc., it appears that these were bought by the New York City Railway from time to time for use generally on the system. Some of these have been actually used indiscriminately on Second Avenue and on other lines; such would seem not to have been appropriated to Second Avenue Line. Others presumably have been used only in the service of that line, and upon a liberal construction may fairly be held to be a part of its "tools, implements, machinery and equipment." Any such the receivers should turn over with the road, and the master will take testimony and pass upon any which are in doubt.

5. It is contended that Metropolitan receivers should pay over to the petitioner a sum of money equal to the amount of cash delivered by the Second Avenue Company to the Metropolitan at the time it took possession. The lease expressly provides that if the lessor shall resume possession of the demised property on account of any default of the lessee, then the money so received shall be deemed to have been a loan and shall be returned by the lessee. Petitioner may have a provable claim against lessee and sublessee for the whole or any part of this sum, but certainly it never came into the possession of the receivers, and no obligation rests upon them to repay it.

6. For several years past no franchise taxes have been paid on this property, the amount being in litigation with the city authorities. Petitioner may have a perfectly good claim against lessee and sublessee for failure to protect the property against the lien of these unpaid taxes, but he certainly is not entitled to demand that these receivers

"save harmless and indemnify" the Second Avenue Company against any claim or claims of the city of New York on account of such taxes.

7. Petitioner also prays that Metropolitan receivers be directed specifically to perform a certain contract made at the time the road was electrified under the terms of which electricity from the Ninety-Sixth street power house was to be furnished to the Second Avenue Road at the actual cost thereof per car mile during the unexpired term of the charter of the Second Avenue Company. It does not appear that receivers have ever adopted this contract, and it is difficult to understand upon what theory it is contended that they are bound by it. If petitioner wishes seriously to press such a claim, he may present his evidence and argument before the special master. Metropolitan receivers, however, may make a contract similar to that in the case of the Belt Line for furnishing power for operation of the Second and First Avenue Lines on reasonable terms.

8. It also appears that in the ducts of the Second Avenue Road there are now some cables which transmit power to other parts of the Metropolitan System. It would be unwise to turn the property over without some provision which will protect receivers from being interfered with in the use of these ducts until others on property remaining in their possession can be provided or arrangements made for continuance in present ducts. The details are not fully set forth, but it is a matter which can no doubt be easily arranged between the parties, since Metropolitan receivers state that they are willing to pay reasonable compensation for the privilege. A contract between the receivers covering this point should be presented at the time the order is submitted for signature.

9. There has been no unreasonable delay on the part of receivers in examining into the question of the propriety of accepting or rejecting this lease. The whole system is most intricate, and the method of keeping accounts made it difficult to distribute receipts and expenses between the different routes. The case is within the principles enunciated in Quincy R. R. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787, 36 L. Ed. 632, but receivers (New York City and Metropolitan) should account for whatever receipts came into their hands from the operation of the road during the period for which no rent has been paid deducting whatever is properly chargeable against the same. This, of course, is a matter to be taken up in the first instance before the master.

In this connection the receivers (New York City and Metropolitan) present a special claim for moneys expended subsequent to their appointment in putting the First Avenue Line between 59th and 125th streets in fit condition to run. That also is referred to the special master.