GUARANTY TRUST CO. OF NEW YORK v. METROPOLITAN ST. RY. CO. et al.

(Circuit Court, S. D. New York. January 28, 1909.)

No. 149.

1. STREET RAILROADS (§ 54*) — MORTGAGES — CONSTRUCTION—AFTER-ACQUIRED PROPERTY.

A clause in a general mortgage executed by a street railroad company on all of its property, which specified as included therein all after-acquired engines, machinery, tools, and equipment of ever description used in operating the mortgagor's lines, covers machinery subsequently acquired and installed in buildings on real estate afterwards acquired and not subject to the mortgage, which is used in operating such lines, or in any manner in connection therewith, where it is not attached to the realty and can be removed without injury thereto.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 133; Dec. Dig. § 54.*]

2. STREET RAILROADS (§ 54*) — MORTGAGES — CONSTRUCTION—AFTER-ACQUIRED PROPERTY.

A street railroad mortgage covering all of the property of the mortgagor specifically enumerated a number of lines of road either owned or leased by it, and provided, inter alia, that it should include all "equipment of every description now used or which may hereafter be used or employed upon said several lines or routes, whether now owned by the railroad company or hereafter to be acquired for use upon or in connection with the same." *Held*, that such provision included rolling stock and all other personal property subsequently acquired by the mortgagor and devoted to use generally on its system, which included, not only the lines enumerated and covered by the mortgage, but other after-acquired lines, which were, however, operated in connection therewith, and all of which, by the law of the state requiring the exchange of transfers between them were made a single unitary system.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 133; Dec. Dig. § 54.*]

3. STREET RAILROADS (§ 55*)—FORECLOSURE OF MORTGAGES—SALE OF PROPERTY—RESERVATION OF RIGHT TO IMPOSE LIENS.

A decree foreclosing a mortgage given by a street railroad company operating an extensive system, including leased lines, which system has been operated for several months by receivers, must necessarily reserve to the court the right to impose liens on the property after its sale, in case it shall be necessary for payment of the expenses and obligations incurred by the receivers, including personal injury claims, and balances which may be found due to lessors whose lines have been returned to them for personal property wrongfully withheld.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 134; Dec. Dig. § 55.*]

In Equity. Suit to foreclose mortgage. On final hearing.

Davies, Stone & Auerbach, for complainant.
J. Parker Kirlin, for Metropolitan St. Ry. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.
Bronson Winthrop, for defendant Morton Trust Co.

LACOMBE, Circuit Judge. In affirming the decretal order appointing receivers for this property the Supreme Court expressed the opinion that their possession should not be unnecessarily prolonged. With that opinion this court has been fully in accord. Expedition in

the disposition of a suit is especially desirable, where receivership involves the operation of property employed in rendering a public service, since it seems that such receiverships must always be conducted in a constant atmosphere of misrepresentation, suspicion, and harassment. The court takes this opportunity to express its appreciation of the loyalty of its receivers, who, though often tempted, no doubt, to give up a thankless task, have been willing to go through their unpleasant experience to the end.

A few weeks' investigation of the situation as it existed when receivers took possession made it quite manifest that the ordinary reorganization, which usually follows with reasonable promptness when receivership is sought for as a temporary haven in times of financial distress, was not to be looked for in the immediate future. The condition of the property physically and financially precluded any such expectation. Apparently the only way of escape lay through foreclosure of the mortgages. This made it necessary to wait six months in order to default on interest payments under both of them; and, after default in interest, the trustees under the mortgages had to gather together the requisite number of bondholders to declare principal due, and were delayed in doing so because the bonds were not registered and their holders could be ascertained only by advertisement and inquiry. In consequence the bill of foreclosure in this suit was not filed until the summer vacation, and issue was finally joined last fall. In order to avoid delay in taking testimony before an examiner under the 90-day rule, the suit has been tried in court and testimony was closed some 3 weeks ago.

The time which has elapsed since receivers were appointed has not been wasted. In this interim practically all the contract claims have been investigated and passed upon by the master. Out of over 4,500 actions and claims for damages resulting from accidents occurring prior to receivership, all but a score or so have been liquidated in amount by trial or otherwise. Of other tort claims, aggregating over 4,000, all will be liquidated by the end of this month.

The receivers, and all their co-workers have been untiring in their efforts to put the property in a condition to render efficient public service. From insurance money, the salvage of four disastrous fires, from the proceeds of receivers' certificates, from the daily gross earnings, there has, since receivers were appointed, been put into this property, power houses, substations, and car barns, repair shops, tracks, conduits, cars (including 371 new ones purchased). motors, and equipment, upwards of $5,800,000, and work is now under contract, which will be completed before sale, amounting to $2,200,000 more, making an aggregate expenditure of $8,000,000. These figures do not include ordinary repairs, nor anything laid out on the Third Avenue System, where other millions have also been expended. Some small part of the results of this expenditure is presumably apparent to whomever may choose to look, but by far the greater part is as inconspicuous as are the cells of the coral on whose foundation new land rises above the surface of troubled waters. But it is there, every dollar of it, and contributing, the whole of it, to increase the factor of safety and to promote efficiency of service.

Believing that large sums of money, which should have found their way into the treasury of the company whose property was turned over to the custody of the court, had been diverted or retained, the receivers instituted an exhaustive and careful investigation of the voluminous and intricate financial transactions of many years. It was no easy task to formulate involved details into the exact language of pleadings which would stand the test of demurrer and could be supported by legally competent proof, especially so when the auditing and accounting bureaus were overwhelmed with calls for information, statistics, and reports by representatives of many different creditors and by the Public Service Commission, all of which, of course, required a prompt response. As a result of the work of several months two actions were brought. One of them has resulted in a judgment for $4,900,000, about to be appealed. The other, to recover $3,500,-000, is now on trial on the merits, and is being vigorously prosecuted; both suits being now in charge of New York City Railway receiver, to whom they were turned over on August 1st.

The above remarks are, of course, obiter dicta; but it seemed only fair to the receivers that, as their trust draws to an end, the court should put permanently on the record some brief statement of what they have accomplished.

This action is for the foreclosure of a mortgage dated February 1, 1897. All the facts essential to secure relief—the execution and delivery of the mortgage, the issuing of the bonds, defaults in payment of interest, and request by the proper number of bondholders to declare the principal sum due—are proved without contradiction. The only matters in controversy are as to whether or not certain property now in the possession of receivers is covered by the mortgage and should be included in the decree of sale. The complainant may take a decree in the usual form, providing that in the event of the failure of the mortgagor to repay the mortgage debt, with interest, within 20 days from the date of the entry of the decree, the property covered by the mortgage be sold at public auction to the highest bidder.

The passages of the mortgage which describe the property, rights, and franchises covered thereby are as follows:

"First. All and singular its property and franchises of every nature and description whatsoever, including all its lands, buildings, and real estate in the city of New York, and all its railroads, railroad properties, and railroad routes now constructed and in operation, and all its franchises to maintain, construct, and operate said railroads, and to exact fares thereon, including particularly the railways, properties, and franchises formerly of the following named companies, with any and all additions thereto and extensions thereof now constructed and in operation, viz.: [Here follows an enumeration of the Houston, West Street & Pavonia Ferry Railroad Company and the six other companies which had been, prior to the mortgage, consolidated into the Metropolitan Street Railway Company.] Also the line of railway known as the Fort Lee Ferry Extension. * * * Together with all the horses, cars, carriages, tools, chattels, machinery, motors, engines, and equipment of every description now used or which may hereafter be used and employed on said several lines or routes, whether now owned by the railway company or hereafter to be acquired for use upon or in connection with said several lines of railway.

"Second. All the right, title, and interest of the railway company in and to the railroads, railroad tracks, railroad routes and franchises, equipment,

real estate, contracts and contract rights, and other property of every nature and description whatsoever, described and included in the following described instruments of lease, viz.: [Here follows an enumeration of eight different leases.]

"Third. All and singular the lots, pieces, or parcels of land, with all and singular the buildings and improvements thereon, lying and being in the city, county, and state of New York, and bounded and described as follows: [Here follows an enumeration of nine pieces of real estate, the last two being leaseholds.]

"Fourth. All the shares and capital stock of certain corporations, described as follows, viz.: (1) 14,000 shares Broadway & Seventh Ave. R. R. Co. (2) 4,000 shares 42d St. & Grand St. Ferry R. R. Co. · (3) 3,000 shares Central Park, North & East River R. R. Co. (4) 9,900 shares 34th St. Crosstown Ry. Co.

"Fifth. All and singular the rights, privileges, and franchises of the railway company connected with or necessary for the operation of the said several lines of railway hereinbefore described, and all the horse cars, motors, engines, and equipment of every description now used, or which may hereafter be used or employed, upon said several lines or routes, whether now owned by the railway company or hereafter to be acquired for use upon or in connection with the same, together with all and singular the tenements, hereditaments, and appurtenances belonging to or in any wise appertaining to any of the lands, railways, or property hereinbefore described, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the railway company of, in, and to the same and every part and parcel thereof, with the appurtenances."

Two parcels of real estate included in the above enumeration have been sold subsequently to the mortgage and lien released. The matters in controversy as to other property may be separately considered.

## Central Park, North & East River Railroad.

This is one of the leases enumerated in clause second, supra. On June 29, 1908, after a hearing in which the lessor participated and in which it appeared that this line was being operated at a loss, the court instructed receivers that they should terminate the existing situation and relieve the property which they were operating—the whole system—from the burden of this unprofitable contract, adding:

"If the lessor should thereafter offer the property on more favorable terms as to rental, and also as to provision for such construction expenses as might be required to render the property more efficient for service, such proposition may be then considered."

No offer of the property on more favorable terms was received. The line was turned over to the lessor early in August, and has since been operated by it. An application was made by lessor to the court to instruct receivers to turn over to it certain items of personal property. This request was in part granted, and as to other items was sent to the special master for report. Pennsylvania Steel Co. v. N. Y. City R. Co. (C. C.) 165 Fed. 472 (opinion of October 19, 1908). Under these circumstances it would seem that the lease has been abrogated. It should not be included in the enumeration of property to be sold under decree.

The leases of the Third Avenue and Second Avenue Lines, which are now in the hands of independent receivers, are not covered by the mortgage here sued upon.

## Operating Agreements.

Complainant has made proof of three agreements for operation, respectively, of the Thirty-Fourth Street Crosstown Line, the Twenty-Eighth and Twenty-Ninth Street Crosstown Line and the Fulton Street Line, all entered into before the execution of the mortgage. None of these are enumerated among the leases specified in clause second (supra) and the first impression of the court was that for that reason they were not covered. A more careful study of the mortgage, however, indicates that there is a distinction between "instruments of lease" and these trackage contracts. It can hardly be conceived that at the date of this mortgage it was not intended to subject the entire property of the system to the lien of the mortgage, and an overtechnical construction which would exclude these contracts surely cannot express the intention of the parties. All are covered; but, since the trackage agreements with the Twenty-Eighth and Twenty-Ninth Street road and the Fulton Street road have been terminated, they should not be included in the property offered for sale.

## Fixtures.

The real estate on which there have been installed substations in 146th street and in Front street is concededly after-acquired and not covered by the mortgage. Within these buildings are certain machinery, rotaries, transformers, and switchboards, which are not permanently affixed to the structure and can be removed without any detriment to the building. It is contended that these are fixtures, and, like the real estate, not covered by the mortgage. The contention is overruled, and these pieces of personal property, which were installed generally for the purpose of the system as a whole, should be classed with the other personal property referred to infra. The same ruling is made as to certain milling and feed-cutting machinery in stables and barns. In the car barns at Lexington avenue and Thirty-Third street, Eighty Fifth street and Madison avenue, 146th street, and Ninth avenue and Fifty-Third street, in the store yard at Fifty-Third street near Ninth avenue, and in the stable on Twenty-Third street leasehold (all after-acquired property), are certain wiring and switches for electric lighting of those buildings which are apparently fixtures and are not covered by the mortgage. They should not be included in the decree of sale.

## Rolling Stock and Equipment.

Receivers have in their possession and are operating on the lines 70 cars, identified by number, which were recently bought by the Central Crosstown Railroad Company and are its property. They should be excluded from the decree. Cars received under leases from the Third Avenue and the Second Avenue Lines were returned to those companies (or their receivers) when they were separated from the system, are no longer under the jurisdiction of this court, and cannot be included in the sale. As to the other cars now in possession of receivers, some were originally the property of the consolidated company, some came under lease, some were bought from time to time,

but they were all used generally in the service of the whole system. Cars were shifted from one line to another as the necessities of service required, some were run partly on lines enumerated in the mortgage and partly on lines subsequently acquired. In all cases where cars were used on lines not enumerated, they were operated in connection with enumerated lines; and the single fare paid by a passenger on an enumerated line entitled him to transportation to his destination on any nonenumerated line so operated. It would seem that the entire rolling stock and equipment are within the fifth clause, supra, covering after-acquired property of that sort "for use upon or in connection with" the lines enumerated in the mortgage. All such property, cars, motors, engines, tools, and equipment of every description should be included in the decree of sale. This ruling covers all power equipment, whether electric or horse, including cables and supplies for power, renewal, or repair. All were devoted generally to the same system, and, when not used or bought for use exclusively on enumerated lines, were intended for and used on lines operated in connection with enumerated lines; the single fare transfer act bringing the personal property employed in operation into a unitary system. The decree will cover the entire personal property used, employed, or intended for use on the system, except cash in hand on the day of sale or delivery.

### Reservation of Liens.

There are certain obligations which must be paid by the property, should other means of payment fail. It is not possible to adjust these before sale, and the decree will therefore contain provisions authorizing this court hereafter to adjust the same and to make the amount thereof a lien upon the property sold, with power to retake the property in the event of the purchaser or subsequent owner failing to pay the amount when adjusted. The following enumeration is thought to be exhaustive, but counsel may be able to call the court's attention to some items which may have been omitted:

(A) There are outstanding $3,500,000 of receivers' certificates paying interest at 5 per cent. and falling due June 15, 1909.

(B) The receivers have incurred and will have to incur obligations for work, labor, and services necessarily required for operation, maintenance, and construction. This, however, does not include expenditures for improvements to after-acquired real estate not covered by the mortgage now under foreclosure, such as the buildings on the block 146th to 147th street and Lenox avenue and other parcels. At whatever period the property might be turned over it would necessarily happen, with such an extensive system, that many of these obligations would be unpaid and much of the work contracted for would be incomplete. All unpaid indebtedness must be paid, and the obligations of receivers under unfinished contracts must be assumed.

(C) During the operation of the roads under orders of the court accidents have occurred, and will occur, through negligence of employés of the receivers. Damages resulting therefrom and not paid before transfer of the property must be paid by the purchaser or subsequent owner of the property.

(D) Orders have been heretofore made authorizing inquiries before the special master as to claims by the Third Avenue Railroad (Penn. Steel Co. v. N. Y. City Railway Company [C. C.] 165 Fed. 478), by the Central Park, North & East River Railroad Company (Id. [C. C.] 165 Fed. 459, 472), and by the Second Avenue Railroad (Morton Trust Co. v. Met. St. Ry. Co. [C. C.] 165 Fed. 489), for use and occupation by receivers, and for items of personal property not turned over. Should these claims be prosecuted, and the special master find anything to be due on them, or any of them, the amount thereof will be a charge upon the property, in the event of there being no surplus income from which to pay it.

(E) Various questions of accounting have arisen as a result of turn·ing over the property of the system by receivers of New York City Railway to receivers of Metropolitan Street Railway. An inquiry has been authorized before the special master to determine whatever issues may be thus presented. Penn. Steel Co. v. New York City R. Co. (C. C.) 165 Fed. 463. Whatever on such accounting may be found to be due by receivers of the Metropolitan will be a charge upon the property.

(F) The expenses of receivership, irrespective of operation of the roads—e. g., fees and charges of special masters, of receivers, of counsel, court officers, etc.—when taxed and adjusted by the court, will be a charge upon the property. See opinion last above cited.

(G) In this suit there have been filed cross-bills alleging that certain persons have claims against the property which they assert to be entitled to a preference. Should it happen that any of these claims are held to be valid and preferred, they will to that extent be a charge against the property.

Of these items above enumerated it may be noted that some of them will presumably eventually cancel each other. For instance, the money which would come to the New York City receiver under E will be used by him so far as it will go in paying items included in D, and also in paying such parts of B, C, and F as represent transactions within the period of operation by New York City receivers. More-over, should the New York City receiver realize anything from the choses in action which he is now prosecuting on behalf of that road or from other sources, the cost and charges of that New York City Railway receivership will be a first and prior lien on such moneys collected by him, and if any items in B, C, D, and F shall have been paid out of the property of the Metropolitan Company, such items should be repaid by the receiver of the New York City Railway out of the moneys so collected by him.

Whether, in undertaking to reserve the right to impose a lien for these various items, it is wiser to enumerate them all specifically, or to cover them by some general language, is a matter upon which the court will be pleased to hear any suggestions from counsel.

## Abrogation of Leases.

Part of the property covered by the mortgage consists of leaseholds. As to some of these the receivers, convinced upon investigation that they were unprofitable, elected not to accept them, and the leased

property was taken back by owners. It may be that there are other leases, the profitableness of which is open to question, but as to which the receivers have not felt warranted as yet in taking action. There seems to be authority for the proposition that the purchaser should not be bound by leases that he may regard as unprofitable and that he may acquire by conveyance the receivers' right of election. On this point the court would like to hear counsel. It may be that the same result could be effected by a provision that receivers should not turn over the property until some named time after sale, and that in the interim, if requested by the purchaser, they would, in any particular instance, themselves exercise their election and return the leased property.

The bonds and past-due coupons secured by this mortgage should be a proper tender to the amount of their distributive share of the proceeds on account of the purchase price. The decree should contain a clause extending the October equity term for the purposes of this suit until after sale, so that no technical objection may be raised, should it be necessary after the expiration of the regular term to amend the decree in any particular.

The complainant's counsel will prepare a proposed form of decree in accordance with the views above expressed, which on February 15, 1909, he will serve on counsel for all other parties. The court will give a hearing on the settlement of the decree on February 23, 1909, at 2:30 p. m. Counsel who may intend to propose amendments will serve copies thereof on all parties two days before the hearing. Inasmuch as a decree in accordance with this opinion may not be in all respects satisfactory to complainant, it may also propose and serve amendments, if it desires to do so. The long time given for settlement of the decree will insure careful consideration of its terms, and will also afford opportunity for the additional judgment creditors recently brought in to file their notices of appearances and requests to be treated as if they had been present at the trial.