## PENNSYLVANIA STEEL CO. v. NEW YORK CITY RY. CO. et al.

(Circuit Court, S. D. New York. September 21, 1910.)

RECEIVERS (§ 163*)—PAYMENT OF CLAIMS—PRIORITIES.

An application in insolvency proceedings against a street railroad company for an order directing the payment by the receivers of certain contract claims in full as preferred claims denied, pending final determination of the status of other classes of claims also claimed to be entitled to preference, and also the adjustment of accounts between the receivers of related companies necessary to determine the funds available for the payment of such claims.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 312–316; Dec. Dig. § 163.*]

In Equity. Suit by the Pennsylvania Steel Company against the New York City Railway Company and others. On motion to direct receiver to pay certain claims. Motion denied.

This is an application for an order directing the receiver of the New York City Railway Company to pay out of the funds in his possession all contract claims, with interest thereon, which have been allowed or may hereafter be allowed against the New York City Railway Company for supplies, materials, or services furnished or rendered in or about the operation of the Metropolitan-Third Avenue street railway system by the New York City Railway Company, or for any new construction undertaken or carried on by the New York City Railway Company prior to September 25, 1907, the date when receivers were appointed.

Byrne & Cutcheon, for complainants.
James L. Quackenbush, for defendant.
Masten & Nichols, for receiver Metropolitan St. Ry. Co.
Dexter, Osborn & Fleming, for receiver New York City Ry. Co.

LACOMBE, Circuit Judge. These claims amount in all to about $1,250,000, of which nearly $1,130,000 has been allowed by the master, but without any distribution as between "operating" and "construction" claims. The application is based upon the proposition that in equity the receiver has funds in his hands which are properly applicable to the payment of these contract creditors' claims to the exclusion

of all other claimants, and that such funds are greatly in excess of the amount of such contract creditors' claims.

It is now nearly three years since the New York City Railway Company was placed in receivers' hands, and its receivers have collected large sums of money. It would be a great gratification to the court if, without further substantial delay, all preferred creditors could be paid in full, or could at least receive a dividend on their respective claims, and it was hoped, when notice of this application was given, that some such relief might now be granted. But the various answers of other parties interested and the report of the present receiver indicate quite clearly that it would not be safe to make any such direction as is prayed for until several questions, as yet undisposed of, shall be finally determined. It is thought, however, that these questions have reached such a stage that they can be thus disposed of with reasonable expedition. They may be here briefly formulated:

1. The application is made on behalf of creditors to the amount of about $1,250,000 who claim to be entitled to a preference over all other creditors. But there are other creditors who insist that they are equally entitled to a preference in payment out of the funds in receiver's hands.

In the first place, there are tort claims, for personal injuries, aggregating nearly $1,850,000. Contention has been made that such claims for damages resulting from accidents which happened before the appointment of receivers through negligent operation of the railway by defendant should rank with claims for labor and materials supplied for operating the road. This contention came up incidentally over two years ago upon an application to adopt certain rules and classification, contained in some books relating to street railway accounting, as the basis for classification of claims, and to direct receivers to follow such classification.

The court treated the application as directed really to obtain a ruling as to the status of such claims. Reference was had to conflicting decisions in the federal courts, and the opinion of the Circuit Court of Appeals in the Eighth Circuit (St. Louis Trust Co. v. Riley, 70 Fed. 32, 16 C. C. A. 610, 30 L. R. A. 456) was concurred in and followed. The application was denied, and it was held that such tort claims accruing prior to receivership rank with general unsecured claims and should be so classified. Penn. Steel Co. v. New York City Ry. (C. C.) 165 Fed. 457. It was supposed that this decision would be reviewed on appeal, but no appeal was ever taken, possibly because the application was a summary one, and it was thought better to secure final determination on some testimony. Subsequently, upon request, the court, on April 27, 1909, filed a memorandum instructing the special master that he should, "upon notice and after hearing, report what, if any, claims should be classified as preferred." Whether or not any test case as to the status of personal injury claims has been made up before the special master the court is not advised; but it certainly would seem that this question might speedily be submitted to him and put in condition for securing a decision of the Circuit Court of Appeals, which would finally dispose of it.

It appears that the only committee of tort creditors of which the court has any knowledge expresses, by counsel, its assent to the pending application; but how many such creditors it represents does not appear, and the assent is guardedly expressed as follows:

"The tort creditors will probably consent to the proceeding and are fully protected by the remaining funds."

Under all these circumstances, it cannot be assumed to be finally settled that the preferred claims will not be increased in the amount of $1,850,000.

In the next place, there are claims filed by the city of New York for car license fees amounting to nearly $200,000, which the city claims are preferred. It is stated in a brief filed in support of this motion that this question was determined adversely to the city by the Circuit Court of Appeals in the Third Avenue-American Surety Co. Case, 180 Fed. 710. But that case was complicated with a question of subrogation. Another appeal, which involves the point, has been taken, but is not yet argued.

The city has also filed claims for upwards of $4,500,000 percentage of gross earnings and upwards of $9,000,000 for penalties, on all of which it insists that it is entitled to a preference. The brief above referred to asserts that the city has agreed to withdraw these claims; but it has not yet done so, and so far as the record shows there are now upwards of $15,000,000 of claims on which a preference is claimed, irrespective of those of the contract creditors who make this application. These might be disposed of expeditiously (as to their status); but, until that has been done, it would not be wise to undertake to pay a dividend to any claimant of a preference.

2. The petitioners show that the receiver has collected over $6,500,-000 on two choses in action of the New York City Railway Company recently settled. See memorandum of July, 1910. Of this sum, however, $3,500,000 cannot now be disturbed. On March 30, 1908, that amount of receivers' certificates was authorized. 161 Fed. 787. Inasmuch as the proceeds thereof were to be devoted exclusively to the improvement, acquisition, and preservation of property of the Metropolitan Street Railway covered by both mortgages, this court directed that the certificates should be a lien only on that property. 165 Fed. 455. The Court of Appeals reached a different conclusion. It did not determine definitely or finally how much should be redeemed by the estate of either company, nor even whether the New York City Company's estate should redeem any part of them; all such questions being reserved. 163 Fed. 242, 245, 90 C. C. A. 188. And in the decision of that court, affirming decree of foreclosure in Guaranty Trust Company v. Met. St. Ry. Co., 177 Fed. 925, provision was made for a fund in cash ($10,000,000) abundantly sufficient to provide for these certificates and for all other claims against that company. Nevertheless, it was ordered that this issue of receivers' certificates should be secured by lien upon all the property of both companies, including the two choses in action, which have been recently settled. Of the proceeds of these choses in action, therefore, $3,500,000 must be held until all these certificates (and the renewal certificates) are fully paid,

or a. fund sufficient to pay them, from whatever source or sources such fund may come, shall have been segregated and specially deposited for their redemption. This court cannot alter the contract upon which its receivers borrowed this money. The certificate holder is entitled to all the security he bargained for.

3. It is not now known to how much of the money collected on these two choses in action the New York City receiver has a clear title. Two different actions, one at law against the Metropolitan Securities Company, the other in equity against the same company and several individuals, were settled at the same time for a lump sum. No appropriation of payment to either indebtedness was made by the parties paying the money, and there was no statement in the offer of settlement which would indicate any attempt by the debtors to make such appropriation. That being so, the question how the money paid shall be appropriated is to be decided by the creditor, and, since the creditor is a receiver, he will presumably take the instruction of the court thereon. This matter of appropriation is important, because it is understood that claim will be made on behalf of the Metropolitan Company that to the whole, or to some part, of the proceeds of the action at law it is equitably entitled, and that such proceeds are impressed in Receiver Ladd's hands with a trust in its favor.

It would seem, however, that this question may be quickly disposed of by submission of it to this court upon application to instruct receiver how to appropriate the payment, and by review of decision by the Court of Appeals. The rule giving receivership controversies a preference would insure a prompt settlement of the question.

4. Petitioners show a very large apparent balance in the hands of the New York City Railway receiver by charging up to him everything that, since September 24, 1907, has come to the hands of himself and of his predecessors, and crediting him with no disbursements. The fact is, however, that a large part of the money thus received has been actually paid out. Whether it is to be returned to this receiver, or not, cannot now be determined. Nor can it be now determined whether various charges—for use and occupation of other roads, for personal injuries through negligence of receivers' operating agents, etc.—are, or not, to be met out of the money still in the hands of Ladd, receiver. A brief reference to the past history of the receivership will more clearly indicate the question which must first be decided.

On September 24, 1907, Messrs. Joline and Robinson were appointed receivers of all the property of the New York City Railway Company, lessee of the Metropolitan-Third Avenue system, and a few days later they were also appointed receivers of the property of the Metropolitan Street Railway Company, the lessor. When the same receivers were thus appointed the court said:

"The interests of lessor and lessee are different and in a sense diverse. Nevertheless it seems practicable to adjust all questions in a single receivership. In this circuit it is not the practice for receivers to concern themselves with plans for reorganization. Their sole functions are to hold the property intact, operating it as efficiently for the public service as their resources will admit, to ascertain the liabilities, to marshal the assets, and eventually

to sell it to the best advantage and apply the proceeds ratably to the payment of the liabilities. It is thought that the present receivers can do this as holders of the interests of both lessor and lessee. Should future experience seem to indicate that a separate trustee for one of the parties is required, some way to meet the difficulty will be found." 157 Fed. 442.

Subsequently a stockholder of the Metropolitan asked that separate receivers be appointed for that company, on the ground that its interests and those of the New York City Railway were independent and opposing. This application was denied January 7, 1908. After quoting from the former opinion, the court said:

"Nothing has occurred since to indicate the necessity for the appointment of separate receivers. The only controversies now presented between lessor and lessee of the property of the Metropolitan Street Railway Company arise out of the lease, and are confined practically to the question: What shall be done with the moneys received from operating the property? Shall any surplus over operating expenses go to lessor or to lessee, or rather to their creditors? Shall any particular expenditure be charged against lessor's or lessee's interest? Inasmuch as receivers are expending such money only as is required to operate the railroad property as a unitary system and to maintain it in proper condition to render efficient public service, and are not to make any distribution until after liquidation of the claims, *these questions do not require immediate answer.* The receivers can perfectly well discharge their functions as operating conservators of the property without the addition of other receivers, and there would be practical difficulties in the way of undertaking to operate the same road at the same time with two different sets of receivers."

After providing for the representation of all conflicting interests by allowing committees to intervene, it was said:

"In this way all diverse interests are at all times represented by persons whose personal interest it is to press their claims, and the receivers are left, as they should be, free to operate and preserve the property for the ultimate benefit of all." 160 Fed. 222.

Subsequently, on July 16, 1908, conditions having changed—a foreclosure suit being prosecuted—Col. Ladd was appointed separate receiver of the property of the New York City Railway Company, appointment to take effect July 31, 1908, at midnight. Reference may be had to the opinion then filed for the theory of the receivership which continued from October 1, 1907, to August 1, 1908. See 165 Fed. 463. The situation as originally presented was a complicated one until foreclosure simplified it; and it seemed then and seems still the better way to consider the receivers as acting in a dual capacity, representing both companies, but, so far as the public was concerned, using money indifferently, from whatever source it came, to secure an efficient service and effect a restoration of the property, which was in a deplorable condition. Subsequent accounting between the two estates would determine what money should have been thus used and upon which estate lay the burden of keeping up the property as a going concern.

In the opinion last cited language is used which would seem to indicate that the court considered the lease as still in force; but up to that time the question when it terminated, or whether it had terminated, had not been raised nor argued, and it was not then, and has not been since, decided. The court was convinced that the method

pursued was entirely safe because, if any money of the New York estate was used to meet expenses which the Metropolitan estate ought to bear, it would be replaced on final accounting from the income or the corpus. This court secured such repayment by directing a sale subject to lien therefor. 166 Fed. 569, and 168 Fed. 937. The Court of Appeals modified this decree by providing that the purchaser on foreclosure should pay $10,000,000 of his bid in cash. See 177 Fed. 925. If it should turn out upon final accounting between the two estates that money of the Metropolitan was used to meet expenses which the New York estate ought to bear, the receiver of the latter has abundant funds to replace the same.

Reference may also be had to 170 Fed. 335, and 171 Fed. 1015 (subsequently affirmed by the Court of Appeals, 172 Fed. 659, 97 C. C. A. 185), for further reference to the keeping of the accounts. The situation at the outset was further complicated by the circumstance that the system for the first few months was operated at a loss.

Accounting between the two estates was ordered some time ago (170 Fed. 335), and it is understood that after many months of hard work the auditor's department has the account and vouchers in shape to submit to the special master. That officer, however, will be at once confronted with the crucial question whether the lease continued in force until August 1, 1908, or whether its obligations ceased to be binding on either estate on October 1, 1907. These opposing theories will be vigorously supported before him by conflicting interests, and there will probably be much to be said on both sides of the question. It is manifest that the final balance to be struck between the two estates will vary by hundreds of thousands, if not by millions, of dollars, depending upon which theory may be adopted. It would certainly be unwise to make large payments from funds now in the possession of the New York City Railway receiver until it is determined whether or not there may be a large balance charged against its estate.

Moreover, this accounting may be a long, difficult, and expensive operation, and it would be most unfortunate if the special master should conduct it to a conclusion upon one theory only, to have his conclusion reversed by the court of last resort, leaving the work to be done all over again on some other theory. This might be avoided by an application to this court to instruct the special master that in stating these accounts he should consider the lease as terminating on such a date, or as continuing in force till such another date, or to give him any further instructions which may be thought necessary. That application may be made on any parts of the record which may be material, and on further evidence, if necessary. It surely ought not to take long to submit this question, and when it is finally disposed of the accounting will be greatly simplified and can be much sooner disposed of.

In view of all the considerations above set forth, the court is not persuaded that the receiver should forthwith pay out of the funds in his hands the whole or any substantial part of the claims of these petitioners.

The motion is denied.