**AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO.   NEW YORK RYS. CO. et al. v. EIGHTH AVE. R. CO. et al.**

**SAME v. NINTH AVE. R. CO. et al.**

(Circuit Court of Appeals, Second Circuit.   July 3, 1923.)

No. 295.

1. **Street railroads** ⊕⇒49—**Leases held to contemplate surrender of whatever equipment was used at termination of leases.**

Street railway leases, contemplating change of motive power and requiring lessee to maintain, and, on termination of the leases surrender,

---

fully equipped railway systems, *held* to require lessee, on termination of the leases, to turn over to lessors whatever equipment was then used in the operation of the demised railroads.

**2. Street railroads &49—Provision requiring lessee to surrender equipment used not illegal.**

An agreement in a lease of street railroad line to give up, return, or surrender all equipment used by the lessee on the line on termination of the lease, is valid.

**3. Street railroads &49—Lessee held to have kept agreement as to equipment.**

Under a lawful agreement by lessee of street railway line to surrender equipment used on the line on a day reasonably certain, the lessee kept its agreement by using that which made the railroad an operative entity, even though it did not use the same cars and the same machines on the same line all the time; such lessee operating a number of owned and leased lines as a unit.

**4. Equity &62—One meaning of equity following the law is that equity devises means for enforcing lawful result; "equity follows the law."**

One meaning of equity following the law is that equity devises means for enforcing a lawful result, when legal procedure is inadequate.

**5. Street railroads &49—Car mileage basis proper on apportionment of equipment between lessors.**

On apportionment of street railroad equipment between lessors of lines constituting a part of the whole system upon termination of the leases, the use of a car mileage pro rata respecting equipment capable of delivery in kind was proper, as a convenient and reasonable measure of distribution.

**6. Receivers &152—Lessors relegated to proof of claims as general creditors.**

Under a lease requiring lessee to keep street railway line fully equipped and to so surrender it on termination of the lease, if there was not used on the leased lines or on the whole system operated by the lessee as a unit more than such machines as were necessary, proper, or suitable for use on the leased line in question, then there was a breach of covenant, and for such breach of covenant the lessor, upon receivership of lessee, should be relegated to proof of its claim for damages as general creditor, and would not be entitled to any preference, though the proper machine, if furnished by the lessee, would have become the property of the lessor.

Appeals from the District Court of the United States for the Southern District of New York.

Receivership suit by the American Brake Shoe & Foundry Company against the New York Railways Company, in which Job E. Hedges was appointed receiver of the defendant company. From decrees (293 Fed. 612) granting relief petitioned for by the Eighth Avenue Railroad Company and the Ninth Avenue Railroad Company, appeals are taken. Modified and affirmed.

See, also, 277 Fed. 261; 278 Fed. 842; 282 Fed. 293, 523; 291 Fed. 107, 112.

These appeals are taken in the same original and subordinate litigations and relate to the same leases that were before us under the same titles in 282 Fed. 523. The detailed facts are fully set forth in the opinion of Mayer, J., in the court below. The matters material upon this appeal are these:

Down to 1892 the Ninth Avenue Company, and down to 1895 the Eighth Avenue Company, operated under their respective charters as independent local transportation lines in what is now the borough of Manhattan and city of New York. At the dates given, these companies executed leases of substantially all they owned, for very long terms, to a corporation of which New York Railways Company is in effect the successor, at least in the sense of being bound by the contract and covenants of the original lessee. On March 20,

1919, New York Railways Company passed into the hands of a receiver, who continued the operation of its business at least in part, and is still so doing. The Eighth and Ninth Avenue leases have been terminated in the manner set forth in 282 Fed. 523; but differences arose between the receiver and the trustees of the mortgages described in 282 Fed. at page 526, on the one hand, and the Eighth and Ninth Avenue Companies on the other, as to what, if any, personal property—i. e., cars, tools, equipment, and the like—the said former lessor companies were entitled to.

The Eighth and Ninth Avenue Companies thereupon filed appropriate petitions, which were opposed both by the receiver and the trustee of said mortgages. After due hearing the court below entered the orders appealed from, which for the purpose of this proceeding may be thus described: It was held and ordered "that, for the adequate operation of its lines on the date of the delivery to it of the property subject to said agreement of lease (i. e., shortly after date of receivership), the Eighth Avenue Railroad Company reasonably needed 100 passenger revenue cars and 10 nonrevenue cars," and this number of cars were "decreed to be the property of the Eighth Avenue Railroad Company, free from the liens or claims of any of the parties to this suit, or any one claiming under or through any of said parties." The receiver had in fact delivered to the Eighth Avenue Company 85 of these cars without prejudice to the question raised by the petition.

As to the "equipment, tools, materials, and supplies on hand March 20, 1919," the order declared that the petitioner Eighth Avenue Company should receive certain percentages of the same as described and valued in certain exhibits or documents provided by the receiver. Reference to the opinion below shows that this proportion was based upon the car mileage on the Eighth Avenue road as compared with the aggregate car mileage of all the various owned or lessor transportation lines which prior to receivership had been operated as a unitary transportation system by New York Railways Company. In respect of said percentages of equipment, etc., the order declared that the same was "to be delivered in kind as far as practicable," but added substantially that, when delivery in kind was impracticable, the deficiency in value as shown by said receiver's exhibits should be "paid in cash at the inventory price" by the receiver to the Eighth Avenue Railroad Company. It was further provided that all of the equipment, etc., delivered or cash paid under said order by said receiver to said Eighth Avenue Company was free of all liens and claims in like manner as had been previously declared in respect of the cars.

The order on the Ninth Avenue Railroad Company's petition was in similar form and need not be recited. Both the trustees of the mortgages hereinabove referred to and the receiver appealed from these orders, in substance alleging as error that the property thus declared to belong to the petitioning companies was and always had been the sole property of New York Railways and (declared the trustees) subject to the lien of their mortgages; wherefore the action of the trial court resulted in a species of unlawful preference in favor of the petitioners.

Stetson, Jennings & Russell, of New York City (Joseph P. Cotton, Edwin S. S. Sunderland, and Morris Hadley, all of New York City, of counsel), for appellant Guaranty Trust Co.

Geller, Rolston & Blanc, of New York City (Edward H. Blanc, Manfield Ferry, and Philip M. Payne, all of New York City, of counsel), for appellant Farmers' Loan & Trust Co.

Winthrop & Stimson, of New York City (George Roberts and G. Herbert Semler, both of New York City, of counsel), for appellant receiver.

Morgan J. O'Brien, Michel Kirtland, William Greenough, and Roland L. Redmond, all of New York City, for appellees Eighth Ave. R. Co. and Ninth Ave. R. Co.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Facts of the kind that gave rise to this litigation have occurred before and have been presented to the courts of this circuit by a previous insolvency of the New York surface railway system. The receivership of the Metropolitan System, conducted under the title of Pennsylvania Steel Co. v. New York City Railway, presented the same problem of an operating company in insolvency which had carried on a unitary system of transportation by means largely of leased street railway lines. There, as here, the question arose as to what were the rights and/or property of a lessor company whose lease was terminated at and practically by the appointment of receivers. What is locally known as the "Belt Line Case" is reported in 165 Fed. 473, the Third Avenue Case in 165 Fed. 478, and the Second Avenue Case, 165 Fed. 489. See, also, Guaranty Trust Co. v. Metropolitan, etc., Co. (C. C.) 166 Fed. 569, affirmed 177 Fed. 925, 101 C. C. A. 205. It is asserted that these decisions, made in the administration of the same or a similar railway system, cannot be reconciled with the orders from which the present appeals have been taken.

We do not perceive that inquiries as to the lien of mortgages on after-acquired personal property, or proving that there never was a sale or formal transfer of any cars, equipment, or the like by the New York Railways Company to the appellees, advances the matter at all. Nor need we discuss the query whether the cars and equipment of a singly operated city railway line can be regarded as a fungible aggregate, and no more do we consider as vital the assertion that the insolvent lessee never had any intent to allocate to any particular lessor line any especial car or any particular piece of equipment.

The inquiries that lie at the basis of these petitions, of most of the cases above cited, and of other more or less similar causes in other parts of the country (e. g., United States, etc., Co. v. Wabash (C. C.) 38 Fed. 891, and Metropolitan, etc., Co. v. Chicago, 253 Fed. 868, 165 C. C. A. 348), are these: What were the agreements made between lessor and lessee? Were those agreements lawful? Were they lived up to by the parties, and does equity afford any means of carrying out such lawful agreements?

[1]. The agreement of parties before us is found in the leases above referred to. Both of them in terms contemplate, and one in terms requires, a change of motive power; i. e., the abandonment of horse traction and the substitution of electrical propulsion. This means that substantially all the tracks and most of the personal property of the lessor companies were destined to the scrap heap or the auction block. The leases were made in contemplation of this change, and indeed for the purpose of bringing it about.

The lessee agreed in terms to substitute motive power, cars, and equipment, and in effect to maintain fully equipped railway systems, and to hand over such systems so equipped at the expiration or sooner termination of the leases. But these leases go further, and use words both broader and more particular than any considered in the cases above cited. Not only was there the covenant to equip, re-equip, and maintain a complete system of surface transportation, but there was the

specific provision (Ninth Avenue lease) that all the cars, etc., which the lessee might "provide, purchase, substitute or supply" for the operation of the demised railroad should revert to and become the property of the lessor.

In the Eighth Avenue lease the lessee in language to the same effect agreed to maintain a fully equipped road, and further upon the expiration or earlier termination of the lease to deliver up to the lessor "all property of every kind used by the said lessee in the maintenance and operation of said demised railway" (with exceptions not here important). We have cited the words which in our judgment determine these appeals; for fuller quotations from the leases reference may be had to the opinion below.

As we read the contract language, lessee agreed to hand over to lessor upon lease termination whatever was used in the operation of the demised railroad at the time. We repeat that it is unprofitable to consider whether there was a sale or transfer or allocation of any particular car, machine or piece of equipment. It is proven that the lessee did equip, maintain, and operate these railways, and it continued so to do down to the time of termination of lease, which (as held below) was substantially the date of appointing receivers. Therefore it was under an obligation to surrender with the railway and as part thereof what was used thereon.

No such specific covenant, no such careful reservation of right, is found, for instance, in the Belt Line Case, supra. There the court felt compelled to dwell upon the word "substitutes," and it found no substitutes used by the lessee in the operation of the railroad when the time of separation came. It was there held, and is here admitted, that if there had been a substitution in the sense explained in 165 Fed. at page 474, or if there had been on paper a specific allocation of separate cars, machines, etc., to these petitioning companies, a return of such substitutes would necessarily follow upon termination of the lease.

[2] This is but another way of inquiring whether during and down to the end of the lease period the lessee kept his bargain and fulfilled his covenants. It is not denied, and is not capable of denial, that the agreement to return or surrender substitutes was lawful. Neither in our opinion can any illegality attach to a covenant to give up, return, or surrender that which was used pursuant to agreement on the demised railway when the period of surrender arrived.

[3] Thus we think that, under a lawful agreement to surrender that which was used on a day reasonably certain, the covenantor kept his agreement by using that which made the railway an operative entity, even though he did not use the same cars and the same machines on the same road all the time. The foregoing answers the queries above propounded, except the question whether equity affords any means of carrying out this lawful agreement.

[4] The exigencies of business, the long continuance of the receivership, and the demands of the public had, when these petitions were presented, made the enforcement of the lessor's rights somewhat difficult. But one meaning of the phrase concerning equity following the law is that equity devises the means for enforcing a lawful result

when legal procedure is inadequate. It having been found that these petitioners were under their leases entitled to that which was normally used on the demised railways for the fulfillment (not the breach) of the contracts of lease, and used by the lessee, we gather from the record and orders below that each petitioner was given what was normally used in and about its operation on or about the day of separation. Of this we approve.

[5] The use of a car mileage pro rata in respect of equipment capable of delivery in kind is also approved as a convenient and reasonable measure of distribution. It is but a somewhat more specific application of the doctrine in Louisville, etc., Co. v. Cincinnati, etc., Ry. (C. C.) 91 Fed. 699. We have nothing to add to the treatment below of the liens asserted by the mortgage trustees appellant, and we may say the same of the suggestion that by the expenditure of $1,000,000 upon the Eighth Avenue Railway the lessor was discharged from all such other obligations as would be important in this matter.

[6] We cannot, however, agree with the trial judge in respect of his treatment of such machinery or equipment as was incapable of delivery in kind. If there was not used on these petitioning railways or on the whole system operated by the lessee more than (say) one machine of a certain kind, and if that machine was necessary, proper, or even suitable for use on petitioners' railways alone, then there was a breach of covenant. For such breach, as has been often held, claim may be made and pecuniary compensation demanded upon due proof of damage. But the orders under appeal substantially treat such demands as claims entitled to a preference. This we think is a mistake, and on the very grounds that lead to affirmance of the main decision, viz. that the lessee was in respect of cars and most equipment guilty of no breach; it complied with its covenant, and the work of equity is merely to enforce compliance with those lawful agreements.

It follows that the orders appealed from should be modified, by eliminating therefrom all direction that any money payments be made by the receiver to the petitioners, and substituting therefor a provision that in respect of all damages claimed for failure to return or surrender machinery, tools, etc., the petitioners be relegated to proof of their claims as general creditors either before the master or in any other suitable way.

As modified, the orders appealed from are affirmed, but without costs.