## GUARANTY TRUST CO. v. METROPOLITAN ST. RY. CO.

(Circuit Court, S. D. New York.   March 18, 1909.)

1. STREET RAILROADS (§ 55*)—FORECLOSURE OF MORTGAGES—PROVISIONS OF DECREE.

In a decree of foreclosure and sale, covering all of the property of a large and complicated street railroad system being operated by receivers, a provision for a minute inventory, covering fuel, supplies, repair material, etc., is not necessary nor practicable.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 134; Dec. Dig. § 55.*]

2. STREET RAILROADS (§ 55*)—FORECLOSURE OF MORTGAGES—MANNER OF SALE.

On the foreclosure of a mortgage covering the entire property of an extensive street railway system, including leased lines, the public interests are to be taken into account, and the court should preserve the road as a going concern so far as it can be done, and to that end will direct its sale as a unitary system, and not authorize its sale in parcels to suit particular bidders.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 134; Dec. Dig. § 55.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. On settlement of decree of foreclosure and sale. For prior opinion, see 166 Fed. 569.

Davies, Stone & Auerbach, for Guaranty Trust Co.
Brownson Winthrop, for Morton Trust Co.
J. Parker Kirlin, for Metropolitan St. Ry. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.

LACOMBE, Circuit Judge. The elaborate provisions proposed as to inventory of the personal property are rejected, not because of the great labor involved in complying with them, but because they seem impracticable and unnecessary. In the operation of a large and complicated system like this, the items of personal property required for operation, repair, and construction are constantly fluctuating. At whatever time an inventory might be made, it would be found a few weeks later to inaccurately represent then existing conditions. Such an inventory is not necessary. The cars will be listed, described, and identified by numbers, and so will the larger units of machinery. The annual inventory and the books of the receivers will be open to bidders, who will also be given access to all power houses, shops, cars, and storage barns. Certainly no one will bid for this railroad property without the advice of skilled and experienced engineers, whose inspection of the property and what may be found on it, coupled with the list of cars, etc., provided for in the decree, will give all the information needed for the exercise of an intelligent judgment.

The suggestion that the bidder should have some security against receivers disposing of material and supplies intermediate sale and delivery is not persuasive. The only disposition they can properly make of them is to put them into the road or its operation. If, for example, the supply of coal runs down during the period and is not replenished, the purchaser will not get as much coal as he saw when he made the survey; but, per contra, there will not be an unpaid coal bill to that extent for him to assume the obligation of paying. If 500 tons of rails are taken from supplies and laid on the yokes, he will get them just the same as if they remained in storage.

As to the reservation of right to impose lien for unadjusted claims, etc. (see article 7 et al.): This method is adopted mainly in order to enable bondholders to make use of their bonds in bidding. It seems curious that they should be practically the sole objectors to these clauses, which do not undertake to settle priorities now, in advance of the testimony, but merely reserve those questions to be settled hereafter, while a fund to provide for payment is thus secured. There is nothing in these clauses to terrify a prospective bidder on any theory of uncertain future liabilities. The claim of the Third avenue road is now being adjusted. The claims of other roads referred to in the same paragraph are apparently so trifling that no one seems interested in prosecuting them. The obligations of the receivers will be disclosed by the statements provided for in article 10. The damage claims arising during operation by receivers could not be adjusted accurately anyhow, and, as in all such cases, must be figured on by estimates from past experience. Practically all claims of contract creditors of

every kind and sort have been liquidated before the master; and the same is true of the tort claims. An intelligent and careful inquirer need have no difficulty in determining the utmost limit of the amount to secure which the right to impose liens is reserved, and can easily adjust the amount of his bid accordingly.

The Central Park, North & East River Railroad Company objects to having its lease included among the properties sold, since it has taken back its road upon nonpayment of the rent. That road, and also the Twenty-Eighth & Twenty-Ninth street and the Fulton Ferry roads, are not included, for reasons stated in the opinion filed.

Under the right reserved to the purchaser to refuse to adopt any particular lease or traffic agreement, it is possible that one or more of the leased lines may be thrown off; but the court is unwilling at this stage of the proceedings to permit a complete disintegration of the system. For that reason the proposed clauses providing that, on the request of any one interested, the property be offered in separate parcels, are not approved. To do so would put it in the power of the owners of roads which are now money makers for the system to take them out of, it. No doubt the various parcels of real estate add materially to the security of the mortgage; but that mortgage is not the hypothecation merely of a number of pieces of real estate. It is a railroad mortgage, covering the entire property combined into a unitary system, operated as a going concern rendering public service. Every bondholder, when he bought his bonds, knew that they were secured by a railroad mortgage, and that foreclosure and sale would presumably conform to the practice usual with property of that character. In the case of such property the public interests are to be taken into account, and, so far as the court may be able to preserve the road as a going concern, it should do so. That can best be accomplished by offering it in its entirety, with power houses on some parcels, car barns or shops on other parcels, but all welded into a unitary system, ready to be taken hold of and operated by the purchaser without any visible change in service from that rendered by the receivers.

The Supreme Court, when reviewing the original appointment of receivers for this property, called attention to the importance of preserving "a great property operated as one system through the various streets of a populous city." In re Reisenberg, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403. This court must assume that there will be a purchaser willing to pay a fair price for the entire property at a sale which would cut off both mortgages and the stock, and should act in conformity to that assumption.

The date of sale is fixed as late as June 1st in order that any one who wishes to review any of the provisions of the decree may have ample opportunity to present the same to the Circuit Court of Appeals. The record is printed, and there is nothing to cause delay in the presentation or hearing of such appeal, which will be given a preference in that court.